THOMAS McDONALD, RELATOR, v. BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY, RESPONDENT.

Argued April 11, 1923—Decided June 4, 1923.

1. Where an act relates to the machinery of government, the fact that it may regulate internal affairs of several counties does not render such act special so as to bring it within the constitutional inhibition of special legislation.

2. A statute is not tainted with the vice of special legislation because the regulations provided therein are limited exclusively to two counties of the state.

3. The fact that employes of a municipality are placed in the unclassified service, does not come within any constitutional restraint, and it is only in cases in which the statute creating the positions falling within the tenure of civil service is silent that the civil service law applies.

4. The provisions of section 25 of chapter 173 of the laws of 1919, that for mandatory expenditures imposed by a statute approved subsequent to twenty days prior to the passage of the tax ordinance, the municipal body "may" make appropriation therefor, does not leave such act to the discretion of the municipal body, but makes such appropriation mandatory, where the public interest will be subserved thereby.

On rule to show cause why a peremptory writ of *mandamus* should not issue.

Before Justices Kalisch, Black and Katzenbach.

For the relator, *Robert H. McCarter.*

For the respondent, *John J. Fallon.*

The opinion of the court was delivered by

Kalisch, J. The relator, Thomas McDonald, on the 23d day of March, 1923, was appointed, in joint meeting of the senate and general assembly of the State of New Jersey, to the office of superintendent of elections of Hudson county, for a term of five years, at a salary of $5,000 per annum, to be paid by the county treasurer, by virtue of an act entitled "A further supplement to an act entitled 'An act to regulate elections (Revision of 1898),' approved April fourth, one thousand eight hundred and ninety-eight," passed February 28th, 1923. *Pamph. L.* 1923, *ch.* 9, *p.* 26. The title of this act was amended on March 23d, 1923, by an act entitled "An act to change the title of an act entitled 'A further supplement to an act entitled "An act entitled 'An act to regulate elections (Revision of 1898),' approved April fourth, one thousand eight hundred and ninety-eight," passed February twenty-eighth, one thousand nine hundred and twenty-three.'" *Pamph. L.* 1923, *ch.* 173.

The title as amended reads: "A further supplement to an act entitled 'A further supplement to an act entitled "An act to regulate elections (Revision of 1898)," approved April fourth, one thousand eight hundred and ninety-eight,' ap-

proved March fourth, one thousand nine hundred and eighteen."

This is a fitting place to dispose of the attack made upon the validity of chapter 9 of the laws of 1923, as amended by chapter 173 of the laws of 1923, because of the recital contained in chapter 173 that it is a supplement to a supplement, &c.

It is quite manifest that chapter 9, *supra*. was mistakenly entitled a supplement to the election acts of 1898, for those acts were repealed, with two exceptions, by the revision of the election laws of 1920, page 857. Chapter 210 of the laws of 1918 is one of the exceptions, and is an act entitled "A further supplement to an act entitled 'An act to regulate elections (Revision of 1898),' approved April fourth, one thousand eight hundred and ninety-eight," and was expressly reserved from the repeal.

To correct the mistake in the title of chapter 9, *supra,* was the sole object of chapter 173, *supra.*

Chapter 9 was intended as a supplement to "An act to regulate elections," as provided for and expressed in the act of 1918, and which latter act was a statute of living force and still continues to be so. We see no constitutional defect in the title of the act on that ground.

The conceded facts are that the relator and his assistants entered upon their employment under the statute, and counsel of defendant, in the brief submitted to us, says that no point is made by defendant of the fact that the relator seeks payment of salary for himself and assistants appointed by him, and further admits that the relator certified to the defendant a list under his hand, of the persons appointed by him, which stated that to the former's personal knowledge the services for which compensation was sought had been performed or would have been performed by the employes named for the times stated in the list; that the relator filed the claims with the county treasurer and the county treasurer referred them to the county counsel for his opinion as to the authority of the county to pay the same, and that the latter advised the defendant, by letter, that the county treasurer was unable to

make payment because of the fact that he was without funds with which to do so, and also that the statute authorizing such payment is unconstitutional.

Besides the alleged irregularity of the act above discussed, the two general grounds relied on by defendant for its refusal to comply with the statutory mandate are—firstly, that the title of chapter 9, as amended, does not constitutionally express its object, and, therefore, the statute is violative of the constitutional requirement (article 4, section 7, paragraph 4) which provides: "Every law shall embrace but one object and that shall be expressed in its title;" and, moreover, is special legislation in the guise of a general law; secondly, that the budget of 1923 does not contain an appropriation for the purpose of the bureau of elections, and that the statute in question imposes no positive legal duty upon the defendant to make an appropriation to that end, but leaves the matter to be dealt with at the discretion of the board.

As to the attack made upon the constitutionality of the statute because of alleged defect in the title, we are unable to perceive how the object of chapter 9 could have been more clearly expressed than it was in its title—"An act to regulate elections."

A plain reading of the act shows that its provisions concern themselves wholly with the regulations of elections.

The argument advanced by counsel of defendant is to the effect that there is a constitutional infirmity in the title of the act because that while it professes to legislate for the state as a class, it is limited in its operation to counties of the first class, and, in order to have properly expressed the object of the act, the title should have contained the limitation which the body of the act contains, that is, that it is an act to regulate elections in counties of the first class.

And, furthermore, that the title "An act to regulate elections" indicates on the part of the law-making power an intent to legislate for the entire state on a matter of state-wide importance, to wit, elections, the limitation of the purview of the act to counties of the first class makes the object of the law other than that which is expressed in the title, and

hence the act is violative of the constitutional requirements above referred to.

But this criticism to us appears to be hypercritical. In view of the numerous and uniform decisions of the courts of this state on the subject, namely, where an act relates to the machinery of government, the fact that it may regulate the internal affairs of certain counties, cities or other municipalities, and exclude from its operation others, does not render such act special so as to bring it within the constitutional inhibition of special legislation. Of course we do not intend to convey the idea that the legislature may set arbitrary and illusory bases for the purpose of accomplishing indirectly what it is forbidden to do directly.

The fallacy of the contention of counsel of defendant is the result of confounding the object of an act with the incidents necessary to effectuate that object. The object of the statute is to regulate elections. The incidents necessary to carry out the object may require different methods in different municipalities. These methods are dealt with by the various provisions of the statute. Some of the provisions are state-wide, others are solely applicable to Essex and Hudson counties, and inapplicable to other counties in the state, and some of the provisions are solely applicable to every county in the state except Essex and Hudson. Thus, the requirement of registration of voters is applicable to certain municipalities of the state and not to others. The establishment of a bureau of elections may be wholly unnecessary in counties not thickly populated and may be quite necessary in populous counties. Now, therefore, in our view, the mere fact that the title of the statute does not have added to it the words "in the counties of Essex and Hudson," was wholly unimportant, since that was no part of the object legislated on, and there was no contravention of the constitutional clause invoked by the defendant, by limiting the operation of the act to Essex and Hudson counties.

Where a statute, relating to the machinery of government, as here, in its title, expresses its object—"An act to regulate elections," it can make no difference whether or not the lim-

itation of its application is part of such title or is made part of the body of the act. For if this were not the case the various provisions of our general election laws restricting the registration of voters to certain municipalities only, and which are not named in the title of the act, viz., "An act to regulate elections," would, under the contention urged on behalf of defendant, render the act unconstitutional. Such a result is so palpably in conflict with sound reasoning and contrary to the construction put by the decisions of our courts upon our legislative acts akin to the one *sub judice,* that further discussion becomes unnecessary.

Nor can the statute properly be said to be special legislation.

A statute is not tainted with the vice of being special legislation because the regulations provided therein are limited exclusively to two counties of the state. The same could be urged with equal force against the validity of the regulations of the election law restricting the registration of voters to certain municipalities of the state.

It must be conceded that honest elections are the vital machinery of good and free government. It is a matter of the gravest importance to the state that elections should be fairly and honestly conducted. The entire state has a vital interest in protecting elections against fraud, corruption and illegal voting. It is a matter of common knowledge that in sparsely settled districts, as to those eligible to exercise the voting franchise, and the machinery to procure an honest expression of the popular will at the polls, there is no need of that vigilance, supervision or regulation which are required in densely populated municipalities. Therefore, where a necessity arises to add to the machinery of government additional machinery in certain localities for the purpose of attaining the purity of elections, it would be a disastrous blow to the maintenance of free and good government if the sovereign power of the state was powerless to supply such means, without burdening other localities which were not in need of it, with the expense of such machinery. See *Freeholders of Hudson* v. *Clarke,* 65 *N. J. L.* 271 (*E. A.*); *Dickinson* v. *The Freeholders,* 71 *Id.* 159. The legislature was

the sole judge whether the necessity existed in Essex and Hudson counties by reason of their crowded districts and large population and its decision in that regard is not open to question.

But it is further urged that the fact that section 2 of chapter 9 (*Pamph. L.* 1923) provides that appointees of the superintendent of elections shall not be subject to the provisions of the civil service law and shall be in the unclassified service, renders the act special and is an attempt by special legislation to circumvent and override the provisions of the civil service law by an act, the title of which does not disclose any such purpose.

This is, obviously, an untenable claim. In the light of what has already been said in relation to statutes affecting the machinery of government, it may be further added that its employes are "a part of the governmental system," "employed to forward the work of such system," as was said in *Ross* v. *Freeholders,* 90 *N. J. L.* 522, 525, and, therefore, it seems to us that the character of their employment, the duration thereof, &c., are incidental to the main purpose of the statute and may be fixed by it and need not be set forth in its title, and, furthermore, the fact that the employes are placed in the unclassified services does not come within any constitutional restraint.

For it is to be noted that only in cases in which the statute, creating the positions falling within the tenure of civil service, is silent that the civil service law applies.

The refusal, therefore, of the defendant to make an appropriation for the maintenance of the bureau of elections and to pay the salary of the relator and for the services of his assistants as contemplated by the statute was without legal justification.

As to the second ground urged as a legal justification of the refusal of the defendant to make an appropriation for the maintenance of the bureau of elections, in that the statute does not impose upon the board a positive duty to make such appropriation but leaves the matter to its discretion, we think, is manifestly untenable.

Assuming that there was no appropriation made by the defendant for the maintenance of the bureau of elections, and hence, there was no fund out of which the salaries of the relator and his assistants could be paid, then, we think, it became the duty of the defendant to make one, under section 25 of chapter 178 (*Pamph. L.* 1919, *p.* 378), entitled "An act to amend an act entitled 'An act concerning municipal and county finances, approved March twenty-eighth, one thousand nine hundred and seventeen,' as amended by an act approved March fourth, one thousand nine hundred and eighteen."

Section 25, among other things, provides: "Upon the happening of any emergency caused by * * * or for mandatory expenditures imposed by any statute approved subsequent to twenty days prior to the passage of the tax ordinance * * * any municipality or county being without funds to meet the necessities and the conditions created thereby may * * * make appropriations therefor."

In the present case the statute became a law subsequent to twenty days prior to the passage of the tax ordinance for the current year.

The single insistence of counsel of defendant relative to this situation is that the word "may," in the section above quoted, should be taken in its natural sense, and if so considered, leaves it discretionary with the board of freeholders whether or not to follow the behest of the statute.

This contention obviously ignores the purpose and object of the section quoted. Even the most specious reasoning must fail to find a plausible ground for the contended construction. To adopt defendant's construction of the word "may" would lead to a most absurd result. In *Jensen* v. *Woolworth,* 92 *N. J. L.* 529, Chancellor Walker, speaking for the Court of Errors and Appeals respecting a construction to be placed on a certain clause of the Workmen's Compensation act, said (at *p.* 534) : "The rules of construction prevent any of the words of this section from defeating the obvious intent of the legislature. In construing a statute where literal interpretation may lead to absurd results, resort may

be had to the principle that the spirit of the law controls the letter. *Mendles* v. *Danish,* 74 *Id.* 333."

There can be nothing more plain than that the legislature in creating the offices and providing for their payment intended that they should be paid by the county reaping the benefit of their services. The statute expressly provides that the salaries of the superintendent and the persons appointed under him shall be paid semi-monthly by the county treasurer of the counties in which such persons are engaged.

It seems to us that the defendant takes an untenable position in contending that this mandate of the legislature may be successfully defeated by the board of freeholders upon whom the duty is imposed by law to provide financial means to carry out the legislative command, under the pretext that though payment is directed to be made, that, nevertheless, the legislature left to the discretion of the board whether or not it will provide the financial means.

In *State* v. *Newark,* 28 *N. J. L.* 491, Mr. Justice Whelpley, speaking for the Supreme Court (at *p.* 497), said: "Words giving power or permission to do an act which concerns the public interest, when applied to a public body or officers, are to be construed as requiring the act to be done, although the phraseology of the statute be permissive merely, not peremptory, whenever there is nothing in the act to save the permissive form of the expression, as may appoint, or shall have power to do so, to denote that the legislature designed to lodge a discretion in the body authorized to act."

In *Erie Railroad* v. *Public Utilities Commissioners,* 89 *N. J. L.* 57, this court (at *p.* 73) said: "There is a line of authorities which hold that 'may' in a statute means must or shall. Thus in England, in the case of *King* v. *Barlow,* 2 *Salk.* 609, it was said that the word 'may' in a statute shall be taken to be mandatory, where the thing to be done is for the sake of justice or the public good. So, Chancellor Kent, in the case of *Newburgh Turnpike Co.* v. *Miller,* 5 *Johns. Ch.* 113, said, in respect to statutes, the rule of construction seems to be that the word 'may' means must or shall in cases where the public interests and rights are concerned, and where the

public or third persons have a claim *de jure,* that the power shall be exercised."

But enough has been said on this subject. It cannot be successfully denied that the public is interested and concerned in the upholding and enforcement of the provisions of the statute under attack, which cannot be efficiently done unless the defendant obeys the mandate of the statute by making an appropriation, so that the salaries of those entrusted to carry out the provisions of the statute may be paid.

We think the legal right of the relator and those appointed under him to the salaries certified is clear and that a peremptory *mandamus* should issue directed to the board of freeholders of Hudson county to make provisions forthwith to pay the same.

As this proceeding is before us on a rule to show cause, the parties may prepare and mould the pleadings in this case, to the end that the questions presented here may be passed upon by the Court of Errors and Appeals, if the defeated litigant intends to take an appeal from the result arrived at by this court.